MARY A. MALONE, Administratrix, Appellant, v. OLIVER T. MOORE et al., Appellees (two cases).

No. 39900.

October 22, 1929.

*Gill & Gill,* for appellant.

*Hays, Baron & Mathews,* for Hannah Moore, appellee.

*George Magoun,* for Sioux National Bank, trustee and garnishee, appellee.

*Shull & Stilwill,* for James W. Moore, appellee.

FAVILLE, J.—On November 28, 1921, Hannah Moore obtained a decree of divorce from her husband, O. J. Moore, and by said decree was granted alimony in the sum of $107,500, payable in installments. On January 31, 1924, a supplemental decree was entered in said divorce proceedings, by the terms of which the former award of alimony was modified, and it was decreed that Moore should pay to a bank in Sioux City, as trustee, the sum of $500 alimony on the last day of each month during the lifetime of Hannah. We had occasion to consider this decree in *Malone v. Moore,* 204 Iowa 625. On March 15, 1926, the appellant herein recovered two personal judgments against the said Hannah. On May 30, 1928, O. J. Moore died, testate. On June 8, 1928, James W. Moore was appointed special administrator of the estate of O. J. Moore, with the will annexed. After the death of O. J. Moore, no further payments were made upon the alimony accruing to Hannah under said divorce decree until on or about August 29, 1928. At said last named date, the court entered an order, which is, in part, as follows:

"It is ordered that James W. Moore, special administrator of the estate of said deceased, be, and he is hereby, authorized and directed forthwith to pay to the Sioux National Bank of Sioux City, Iowa, the sum of five hundred dollars, to be by it delivered or paid to Hannah C. Moore, to be used by her for her support and maintenance only, and until the further order of this court, the said James W. Moore, special administrator, as aforesaid, is further authorized and directed to pay the said bank for the purpose aforesaid the sum of two hundred fifty dollars on the last day of each month hereafter, if said Hannah C. Moore be then living. * * *

"It is further ordered that the said payments so to be made as aforesaid and the receipt thereof by the said trustee and the said Hannah C. Moore shall be without prejudice to the claim of the said Hannah C. Moore or any heir, legatee, devisee, or creditor of said deceased as to the question of the legal status or effect of the said decree mentioned in said petition after the death of said deceased. The court has not and does not determine hereby that any sums became due and payable under the terms of said decree after the death of said deceased, this order being made as an emergency measure, to preserve the property of said estate from the possibility of sale under execution or other process pending the probate of the will of deceased, or of appointment of a regular administrator to administer said estate. All sums paid by virtue hereof shall be credited *pro tanto* upon the said judgment or such claim thereunder as may be hereafter adjudged to be due and owing the said Hannah C. Moore on account thereof."

It appears that thereafter the special administrator paid to Hannah the total sum of $1,000, prior to October 1, 1928.

A series of garnishments are involved in this appeal, which, for convenience, we will consider separately.

I. On October 2, 1928, the special administrator was garnished, at the instance of the appellant, and on October 3, 1928, said bank was also garnished. It clearly appears that the bank  did not, at said time, have in its possession any money belonging to the appellee, and it was therefore rightly discharged from said garnishment. At the time of this garnishment of the special administrator, there was nothing due from him to Hannah under the order of the court directing him to pay $250 a month to said Hannah. The next installment under said order would be due on the last day of October, if Hannah was living at said time, and the special administrator would not be subject to garnishment prior to that time for said installment. *Malone v. Moore*, supra.

A further question is involved at this point. Could the special administrator be held as a garnishee for the balance which was then due to said Hannah from the estate of Moore

1304

 under the terms and provisions of the supplemental decree in the divorce action? This would amount to $1,000. The special administrator was appointed under Section 11885, Code of 1927, which is as follows:

"When, from any cause, general administration or probate of a will cannot be immediately granted, one or more special administrators may be appointed to collect and preserve the property of the deceased, and no appeal from such appointment shall prevent their proceeding in the discharge of their duties."

The duties of such special administrators are defined by Code Section 11886, as follows:

"They shall make and file an inventory of the property of the deceased in the same manner as is required of general executors or administrators, and shall preserve such property from injury, and for that purpose may do all needful acts under the direction of the court, but shall take no steps in relation to the allowance of claims against the estate. Upon the granting of full administration, the powers of the special administrators shall cease, and all the business be transferred to the general executor or administrator."

It is evident from these sections that a special administrator is a custodian, with power to collect and preserve the property of the deceased. The statute expressly provides that such special administrator "shall take no steps in relation to the allowance of claims against the estate." The property in his hands is *in custodia legis.*

It is the general rule that property *in custodia legis* is not subject to garnishment unless it is expressly so provided by statute. *Martin & Bro. v. Davis & Co.,* 21 Iowa 535; *Boyer v.*  *Hawkins,* 86 Iowa 40; *Pugh v. Jones,* 134 Iowa 746. Code Section 12158 provides who may be garnished, but makes no provision for the garnishment of a special administrator. The powers of a special administrator are of a limited character. In *Sullivan v. Nicoulin,* 113 Iowa 76, speaking of the powers of a special administrator, we said: "He is simply 'to collect and preserve the property of the deceased.'" We also said that:

"* * * any action of the special administrator relating to

the allowance of the claim of defendant for damages, save as a mere set-off, was utterly void.''

See, also, as bearing upon the powers of a special administrator, *Pickering v. Weiting*, 47 Iowa 242; *Long v. Burnett*, 13 Iowa 28; *Rauen v. Prudential Ins. Co.*, 129 Iowa 725. At this point we hold that the special administrator was not subject to garnishment because of his having possession of property of the decedent as such special administrator for sums not covered by the special order of court. So the garnishment of October 2d was unavailing to appellant.

II. On October 23, 1928, the special administrator, without any order of court directing him so to do, deposited the sum of $2,000 in the Sioux National Bank, the trustee named in said  decree and in said order for allowance. Said deposit was accompanied by a letter of instructions from said special administrator to the said bank to hold the said sum ''in trust, and to be disbursed by you as trustee to Hannah C. Moore, by paying her the sum of $250 on the last day of each month if she is living, beginning with October, 1928.'' On October 24, 1928, said bank was garnished. The special administrator was not garnished at said time. At the time of said garnishment, there was nothing due to Hannah Moore, either from the special administrator or from the said bank. Under the order of the court directing the special administrator to make payment, said sums were not to be paid and did not become due until the last day of the month. If Hannah had died before October 31, 1928, the amount ordered to be paid on said date would not have become due, either from the special administrator or from the bank. *Malone v. Moore*, supra. We think it is therefore apparent that the garnishment of the bank on October 24, 1928, was ineffectual, and said garnishment was rightly discharged.

III. On November 30, 1928, the said bank was again garnished. The special administrator was not then garnished. At that time, the said bank had in its hands $1,750 remaining out  of the said sum of $2,000 that had been deposited with it by the special administrator, as above set forth. It is to be noticed that the order of court directed the special administrator to pay the sum of $250 to said bank on the last day

of each month. The fact that the special administrator had deposited the said sum in said bank for the express purpose provided in said order, and under specific directions to the bank that the said deposit was made for said purpose, and for no other, all of which was done prior to the last day of November, did not, we think, change the legal effect of the deposit from what it would have been, had said deposit in fact been made on the said 30th day of November. The order required the money to be paid to the bank on the last day of the month by the special administrator. In pursuance of said order, the special administrator placed said sum in the hands of said bank prior to the last day of said month, with express directions to hold the same and to pay the installment to the said Hannah on the last day of said month. True, the money, although in the bank, did not become available to Hannah until the last day of the month; but the fact that the money was already in the bank on that day, and for that special purpose, made the deposit, when the last day of the month arrived, as valid as though it had in fact been made on said day, or as though the special administrator had appeared at the bank and withdrawn the money and immediately redeposited it, to be paid to Hannah. It is the contention of the appellee, however, that no part of the $2,000 in the hands of the bank was subject to garnishment. Its contention is that the deposit by the special administrator of the $2,000 in said bank was wholly unauthorized and illegal, and constituted a conversion of the said $2,000 by the special administrator. Reliance is placed upon our holding in *Northwestern Mfg. Co. v. Bassett*, 205 Iowa 999. We are not concerned at this point with any question of the liability of the special administrator to the estate. One thing is clear: Under the order of court, the special administrator was required to deposit $250 in said bank on the last day of the month for the use and benefit of the appellee, which said sum was to be paid over to her by said bank. The fact is that, on the said last day of the month, the said special administrator did have on deposit in said bank said sum of $250, deposited for the express purpose of paying the same to the appellee, and the bank held same for Hannah under express order of the special administrator. This was in exact compliance with the terms and provisions of the order of the court. The fact that the special administrator may have ex-

ceeded his authority by depositing a larger sum originally than was due at said time is a matter with which we have no concern in this case. He did have on deposit $250 for the express purpose of making the payment due on that day. The bank was directed to pay said amount to the appellee, exactly as ordered by the court. It was due to her at said time, and was seized by garnishment before said bank paid it.

We are constrained to hold at this point that the sum of $250 which was then due from the said special administrator to the said Hannah, and which was then on deposit in said bank for said purpose by the said special administrator, as directed by the court (or so much thereof as is necessary to satisfy appellant's judgment in the cause in which said garnishment was made), became the property of the said Hannah in the hands of said bank on said 30th day of November, 1928, and was subject to garnishment.

IV. On December 10, 1928, the will of O. J. Moore was duly admitted to probate, and the said James W. Moore, who had been special administrator of the estate, was appointed ex-ecutor. On December 12, 1928, the executor was garnished. It appears from the record that, on the date of his appointment, the executor paid to the appellee $1,500 alimony, under the supplemental decree in the divorce case, and that, on December 12, 1928, the day upon which he was garnished, there was no installment then due to the appellee. Therefore nothing was available to appellant under this garnishment.

V. The bank and the executor were both garnished on January 31, 1929, but not at the same time. After the bank was garnished on said day, it paid to the appellee the sum of $500, a delivery bond having been furnished. Very shortly after said payment had been made, the executor was also garnished. The special administrator had been superseded by the appointment of an executor on December 10, 1928. The authority of the special administrator under the order of court directing him to pay $250 a month to the bank for the use of the appellee had ceased when his appointment as special administrator terminated. Code Section 11886. The fund which the special administrator had previously deposited in the bank belonged to the

estate from and after the date of the appointment of the executor. This fund had not been paid into the bank by the executor while acting in such capacity. The $500 which was paid by the bank to the appellee after it had been garnished on January 31st was a part of the original $2,000 that had been deposited in said bank by the special administrator. Was this $500 subject to garnishment at that time? Any amount due the appellee on January 31st was due under the supplemental decree in the divorce case from the estate of the decedent. All claims of the appellee under the order directing the special administrator to pay her $250 a month had ceased. Upon the discharge of the special administrator, the sum remaining in the hands of the bank which had been deposited by the special administrator belonged to the estate, and the executor had full charge thereof. The money so previously deposited in the bank could not on said date be paid to the appellee by the bank by virtue of the order to the special administrator. It had not been deposited in the bank by the *executor* of the estate for the purpose of paying appellee. It was merely a fund belonging to the estate, then on deposit in the bank. The bank had no specific authority to pay it to the appellee. The garnishing creditor, therefore, found assets of the decedent's estate in the hands of the bank, but said assets were a special deposit belonging to said *estate,* and *not* to the *appellee,* and hence were not subject to garnishment by appellee's creditors. Later on said day, the executor was garnished. What was the situation then? The estate owed the appellee $500 on January 31st. The appellant garnished the executor to secure this $500 due appellee. At the time said garnishment of the executor took place, the appellee had, however, been paid in full out of funds belonging to the estate. True, the payment by the bank to appellee was unauthorized, but the fact is that the payment was made with funds belonging to the estate, and when appellant garnished the executor, the estate was not owing appellee anything. The executor, as garnishee, answered, denying that, at the time of the garnishment, he was indebted to appellee, or had under his control any property, rights, or credits belonging to said Hannah. There was a ratification of the act of the bank in pay-

ing the money of the estate to appellee, so that, at the time of garnishment, the executor was not owing the appellee anything.

We reach the conclusion that under neither the garnishment of the bank nor that of the executor, on January 31, 1929, did appellant reach anything that, at the time of such garnishment, could legally be subjected to the payment of appellant's claims against Hannah.

VI. The arguments of counsel have taken a wide range, and with marked ability have discussed whether or not alimony is a "debt" or "property in possession of another" which is subject to garnishment; also, whether or not reservation in the supplemental decree against alienation by the beneficiary and an exemption of the alimony before actually paid to the divorcee is valid; and also, whether or not the supplemental decree is subject to attack in these proceedings. As to such questions we expressly reserve any pronouncement.

As we have pointed out, the only fund subject to condemnation under the various garnishments in this case is the sum of $250 in the hands of the bank on November 30, 1928. Neither the original decree of divorce nor the supplemental decree is involved in the matter of said $250. Said amount was not held by the bank or paid to appellee under the supplemental decree. It was held under the special order of the court directed to the special administrator, which we have quoted above.

We reach the conclusion that, as to the item of $250, the garnishee should not have been discharged. As to said item, the cause must be reversed. As to all other orders of the court from which this appeal was taken, the action of the trial court is affirmed.

The costs in this court will be taxed three fourths to the appellant and one fourth to the appellee.—*Affirmed in part; reversed in part.*

ALBERT, C. J., and EVANS, KINDIG, and GRIMM, JJ., concur.